IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DONTA TYRONE GILLIE,<br><br>           Plaintiff,<br><br>      v.<br><br>STEVEN ESPOSITO, et al.,<br><br>           Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 14-3704 (JBS-JS)<br><br>**OPINION** |

APPEARANCES:

Donta Tyrone Gillie, Plaintiff Pro Se
#42367-037
FCI Loretto
P.O. Box 1000
Loretto, PA 15940

**SIMANDLE, Chief Judge:**

I.   INTRODUCTION

Before the Court is Plaintiff Donta Tyrone Gillie's ("Plaintiff"), submission of a civil rights complaint pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), (Complaint, Docket Entry 1), and motion for nunc pro tunc service (Docket Entry 7). At this time, the Court must review the complaint, pursuant to 28 U.S.C. §§ 1915 and 1915A to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set

forth below, the Court concludes that the complaint will be dismissed without prejudice for failure to state a claim.

## II. BACKGROUND

Plaintiff brings this civil rights action against Defendants Steven Esposito, Pradip Patel, and Abigail Lopez de Lasalle in their individual capacities as employees of the Bureau of Prisons ("BOP"). The following factual allegations are taken from the complaint and are accepted for purposes of this screening only. The Court has made no findings as to the truth of Plaintiff's allegations.

Plaintiff is a convicted and sentenced federal prisoner currently confined at FCI Loretto, Pennsylvania. Plaintiff states that on February 3, 2013, while he was detained at FCI Fort Dix in New Jersey, he saw Esposito, a physician's assistant, for a "chronic care encounter." (Complaint ¶ 2). Plaintiff had been experiencing pain in his wrist and told Esposito he believed it was broken. (Id. ¶ 3). Esposito examined Plaintiff's wrist and told him it was not broken. He told Plaintiff to purchase a brace and over-the-counter pain medication to treat the pain and swelling. (Id. ¶ 4). He further indicated to Plaintiff that the pain and swelling should decrease over time if Plaintiff followed the instructions. (Id.).

Plaintiff questioned the diagnosis as Esposito had not performed an x-ray. (Id. ¶¶ 4-5). Esposito then became "agitated and began screaming at [Plaintiff] that '[Plaintiff] was no doctor,' that [Esposito] 'would determine if [Plaintiff's] wrist was broken'" and ordered Plaintiff to leave before Plaintiff could see his physician, Dr. Patel. (Id. ¶ 5). Although the encounter form documents the wrist pain, Plaintiff asserts it does not reflect the seriousness of his pain or the fact he told Esposito he believed it was broken, (id. ¶ 6).

Plaintiff followed Esposito's advice and purchase pain medication and a wrist brace. (Id. ¶ 7). His wrist continued to hurt, so he returned to medical for further care on May 2, 2013. (Id. ¶ 8). Esposito examined Plaintiff's wrist and recommended an x-ray. (Id. ¶ 9). The x-ray was taken the next day and showed a "nondisplaced scaphoid waist fracture" in Plaintiff's left wrist. (Id. ¶ 10). Dr. Patel reviewed the x-ray report and recommended that Plaintiff consult with orthopedics. (Id. ¶ 11).

Dr. Winfred Williams examined Plaintiff on May 21, 2013. (Id. ¶ 13). He recommended Plaintiff have surgery and warned him that "due to delay between the injury and the proper diagnosis, even with corrective surgery, [Plaintiff] would likely have permanent damage to [his] wrist, thereby preventing [him] from ever regaining the wrist's full range of motion." (Id. ¶ 14). Plaintiff underwent surgery on July 22, 2013, which included

3

taking a bone graft and bone marrow from his hip for his wrist. (Id. at 15).

After surgery, Plaintiff was returned to his cell instead of being reassigned to a first floor room or being placed in the medical observation rooms. (Id. ¶ 16). He was not given any pain medication. (Id.). The next day he was issued a wheelchair, but did not get a first floor pass until four days later. In the meantime, he was required to climb to the second floor three times a day for meals. (Id. ¶ 17). The prison moved him back to the second floor on September 6, 2013, even though his first floor pass did not expire until August 6, 2014. (Id. ¶ 18). After filing administrative grievances with the BOP, Plaintiff filed this complaint on June 10, 2014.

Plaintiff asserts that as a result of defendants' actions, he has suffered unnecessary pain and suffering and lost the full range of motion in his wrist. He seeks damages in the amount of $1,500,000.

### III. STANDARD OF REVIEW

#### A. Standards for a Sua Sponte Dismissal

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental

4

employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e. The PLRA directs district courts to sua sponte dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This action is subject to sua sponte screening for dismissal under 28 U.S.C. §§ 1915 and 1915A because Plaintiff is proceeding *in forma pauperis* and is a prisoner seeking redress from a government official, and under 42 U.S.C. § 1997e as his complaint concerns prison conditions.

According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive *sua sponte* screening for failure to state a claim,[1] the complaint must allege "sufficient factual matter" to show that the claim is

---

[1] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 42 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) (following *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also United States v. Day*, 969 F.2d 39, 42 (3d Cir. 1992). Although *pro se* pleadings are liberally construed, pro se litigants "still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

**B. Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics**

In *Bivens*, the Supreme Court created a federal counterpart to the remedy created in 42 U.S.C. § 1983. *See Egervary v. Young*, 366 F.3d 238, 246 (3d Cir. 2004) ("*Bivens* actions are simply the federal counterpart to § 1983 claims brought against state officials"), *cert. denied*, 543 U.S. 1049 (2005). In order to state a claim under *Bivens*, a plaintiff must allege: (1) a

6

deprivation of a right secured by the Constitution and laws of the United States; and (2) that the deprivation of the right was caused by a person acting under color of federal law. *See Couden v. Duffy*, 446 F.3d 483, 491 (3d Cir. 2006); *see also Collins v. F.B.I.*, Civ. No. 10-3470, 2011 WL 1627025, at *6 (D.N.J. Apr. 28, 2011) ("The Third Circuit has recognized that *Bivens* actions are simply the federal counterpart to § 1983 claims brought against state officials and thus the analysis established under one type of claim is applicable under the other.").

**IV. ANALYSIS**

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *Id.* at 106. Deliberate indifference to a prisoner's serious medical needs may be found where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) intentionally delays necessary medical treatment based on a non-medical reason; or (3) deliberately prevents a prisoner from receiving needed medical treatment. *See Pierce v. Pitkins*, 520 F. App'x 64, 66

(3d Cir. 2013) (citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)). "However, '[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in . . . tort law.'" *DeJesus v. Corr. Med. Servs., Inc.*, 574 F. App'x 66, 68-69 (3d Cir. 2014) (quoting *United States ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575 n. 2 (3d Cir. 1979)) (alteration in original).

Plaintiff's complaint at its core is a dispute over the adequacy of the medical treatment he received at Fort Dix. He alleges Esposito violated his Eighth Amendment rights by "refusing to order an X-ray of the Plaintiff's wrist on February 2, 2013. This refusing was despite the Plaintiff's wrist was swollen [sic] and he complained of intense pain. When his diagnosis was questioned, Esposito displayed unprofessional behavior and ordered the Plaintiff to leave," thereby preventing Dr. Patel from examining the wrist. (Complaint at 5). Although he calls Esposito's actions a "refusal" to provide medical care, the facts as stated in the complaint indicate there was medical treatment. Esposito examined the wrist, concluded it was not broken, and recommended a brace and over-the-counter pain medication. (Id. at ¶ 4). The facts suggest Esposito did not order an x-ray at that time because he did not think it was

8

medically necessary, not for a non-medical reason. *See Pierce*, 520 F. App'x at 66. Plaintiff's complaints about the adequacy of treatment and Esposito's alleged unprofessionalism are negligence and medical malpractice claims, not constitutional violations. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Plaintiff has failed to allege sufficient facts to warrant an inference of deliberate indifference by Esposito; therefore, he has failed to sufficiently allege an Eighth Amendment violation. The Eighth Amendment claims against Esposito must be dismissed at this time.

    Plaintiff further alleges Dr. Patel and Ms. de Lasalle, Fort Dix's Clinical Director, are liable for failing to supervise Esposito and failing to supervise and train the medical staff, respectively. Supervisors may liable for unconstitutional actions by their subordinates if the supervisors "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Barkes v. First Corr. Med. Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds sub nom Taylor v. Barkes*, 135 S. Ct. 2042 (2015) (internal citations and quotation marks omitted). Failure to

9

train and failure to supervise claims are subcategories of policy or practice liability. *Id.*

In order to proceed on his failure to supervise claim, Plaintiff must first identify a specific supervisory policy or practice that the supervisor failed to employ, and then allege that: "(1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure." *Id.* at 317 (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)). In addition to failing to adequately allege an underlying constitutional violation, Plaintiff has not identified a policy that Dr. Patel or Ms. Lasalle failed to employ or pled facts that would enable this Court to find on a preliminary basis that the other factors have been meet.[2] This claim must therefore be dismissed.

Failure to adequately train subordinates can generally only constitute deliberate indifference if the failure has caused a

---

[2] Plaintiff allegations that Dr. Patel failed to follow BOP policy by not "properly" reviewing Esposito's first report or examining Plaintiff himself, (Complaint at 5), do not rise to the level of a constitutional violation and are more appropriately brought in a negligence or medical malpractice action.

pattern of violations. *Connick v. Thompson*, 563 U.S. 51, 62 (2011); *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 409 (1997). In addition to failing to sufficiently plead that his Eighth Amendment rights were violated, Plaintiff has not alleged there has been a pattern of violations of prisoners' right to medical care due to misdiagnoses by physician's assistants such that Ms. de Lasalle would have been on notice that corrective action was necessary. *Connick*, 563 U.S. at 62 ("Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."). The possibility "that in certain situations, the need for training 'can be said to be "so obvious," that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights' even without a pattern of constitutional violations," is narrow, *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223 (3d Cir. 2014) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989)), and does not apply in the instant matter as the allegations in the complaint fail to rise to the level of a constitutional violation. Plaintiff has not set forth facts that sufficiently allege a violation of the Eighth Amendment by defendants. The complaint must therefore be dismissed at this time.

To the extent the complaint could be construed as raising claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680, those claims must also be dismissed at this time. The FTCA "operates as a limited waiver of the United States's sovereign immunity[,]" *White-Squire v. U.S. Postal Serv.*, 592 F.3d 453, 456 (3d Cir. 2010), and a FTCA plaintiff may sue only the United States, *CNA v. United States*, 535 F.3d 132, 138 n.2 (3d Cir. 2008) ("The Government is the only proper defendant in a case brought under the FTCA."). Plaintiff has not named the United States as a defendant, nor has he submitted documentation indicating that he presented the offending agency, in this case the BOP, with notice of his claims. The FTCA notice must include a "sum certain" demand for monetary damages, and "[b]ecause the requirements of presentation and a demand for a sum certain are among the terms defining the United States's consent to be sued, they are jurisdictional." *White-Squire*, 592 F.3d at 457 (citing *United States v. Sherwood*, 312 U.S. 584, 587 (1941)). These requirements cannot be waived. *Id.* (citing *Bialowas v. United States*, 443 F.2d 1047, 1049 (3d Cir. 1971)). In the absence of this documentation, the Court cannot determine whether it has jurisdiction over any potential FTCA claims. As such, any FTCA claims cannot proceed at this time.

Generally, "plaintiffs who file complaints subject to dismissal under [§ 1915] should receive leave to amend unless

amendment would be inequitable or futile." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002). As it is not clear that amending the complaint would be futile, Plaintiff may move for leave to file an amended complaint.[3] Any motion to amend must be accompanied by a proposed amended complaint, which shall be subject to screening by this Court. If Plaintiff seeks to pursue a malpractice claim under the FTCA, his amended complaint will have to demonstrate that he has submitted the required administrative tort claim notice with the Bureau of Prisons; that is required as a jurisdictional prerequisite for any FTCA case, as explained above. Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and cannot be utilized to cure defects in the amended complaint unless the relevant portion is specifically incorporated in the new complaint. 6 Wright, Miller & Kane, *Federal Practice and Procedure* 1476 (2d ed. 1990) (footnotes omitted). An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must

---

[3] As the complaint is being dismissed, Plaintiff's motion for nunc pro tunc service is dismissed as moot. In the event Plaintiff files a motion for leave to amend, the time to serve Defendants pursuant to Federal Rule of Civil Procedure 4 will not begin to run unless and until the Court grants that motion and permits the amended complaint to proceed.

be clear and explicit. *Id.* To avoid confusion, the safer course is to file an amended complaint that is complete in itself. *Id.*

**V.   CONCLUSION**

For the reasons stated above, the complaint is dismissed without prejudice for failure to state a claim. Plaintiff's motion for nunc pro tunc service is dismissed as moot. Plaintiff may move for leave to file an amended complaint within 30 days of the date of this Opinion and Order.

An appropriate order follows.

| | |
|---|---|
| **February 26, 2016** | **s/ Jerome B. Simandle** |
| Date | JEROME B. SIMANDLE |
| | Chief U.S. District Judge |